RENDERED: AUGUST 7, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-1349-MR

KEVIN M. RUSSELL AND SHIRLEY
M. RUSSELL												APPELLANTS


												APPEAL FROM BRECKINRIDGE CIRCUIT COURT
v.										HONORABLE KENNETH H. GOFF, II, JUDGE
												ACTION NO. 24-CI-00199


JOHN NUNN AND ANGELA NUNN								APPELLEES



OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, CALDWELL, AND COMBS, JUDGES.

COMBS, JUDGE:  This case concerns an action to quiet title to real estate involving a claim of adverse possession.  Kevin Russell and Shirley Russell, his wife, appeal a judgment of the Breckinridge Circuit Court entered on September 24, 2025, in favor of John Nunn and Angela Nunn, his wife, concerning litigation as to adjacent parcels of property on the Rough River Reservoir in McDaniels,

Kentucky. The parties sought to quiet title to a disputed portion of the tracts, and the circuit court concluded that the Nunns had acquired title by way of adverse possession. The Russells alleged that the Nunns were in violation of certain deed restrictions, but the court rejected that claim as being time-barred. After our review, we affirm.

We recapitulate briefly the limited record on appeal. The Nunns own property at 621 Timbercrest Lane consisting of a lake house and a lot measuring 0.66 acres. Their property is also known as Lot 45 in the Timbercrest Subdivision. The Nunns purchased the lake house from Angela's parents in June 2017; Angela's parents had owned it since 2001. The house features a wrap-around deck and is accessed by means of a driveway. A survey undertaken in December 2001 indicated to the Nunns' predecessors-in-title that portions of the deck and part of the driveway encroached upon the adjacent Lot 47. The Nunns added a gravel area near the driveway after 2021.

The Russells live across the street at 602 Timbercrest Lane. In April 2024, they purchased Lot 47, the property adjacent to the Nunns' property. In August, they filed a quiet-title action against the Nunns. In their complaint, the Russells alleged that the Nunns placed personal property on their lot and constructed a driveway extending 2.5 feet beyond the boundary line. They also alleged that a graveled area and deck extended 7.5 feet beyond the boundary line.

In a separate count, the Russells alleged that the Nunns' property was subject to certain deed restrictions prohibiting any lot owner from constructing a building or any structure -- other than a boundary line fence or wall -- closer than 10 feet to any adjoining lot. They alleged that the deck, driveway, and the Nunns' lake house had been built within 10 feet of the common boundary line. They sought to enforce the deed restrictions and asked the court for a permanent injunction requiring the Nunns to remove any structure constructed in violation of the restrictions.

The Nunns filed their timely answer and a counterclaim. The Nunns alleged that they began adversely possessing the disputed portion of Lot 47 in June 2017 when they purchased the property and that they were entitled to the benefit of the years that their predecessors-in-title had adversely possessed the very same property. The Nunns acknowledged that their property was subject to the deed restrictions as described by the Russells, but they denied that they had violated the restrictions. The Nunns asked the court to "resolve the conflict by evaluating the credibility and accuracy of the surveys presented and rule in [their favor], summarily determining the Improvements to be within their property boundary." They asked the court to declare that they had adversely possessed the disputed portion of Lot 47 claimed by the Russells.

In June 2025, the Nunns filed photographs of the house; copies of surveys conducted for Angela's parents by Norman Houglan in December 2001; and the deed description for the property prepared for Angela's parents by Houglan in 2001. Again, Houglan's survey plainly indicated that portions of the deck and driveway encroached upon Lot 47. Next, the Nunns' "verifications in support" of a motion for summary judgment were filed. These sworn statements of each of Angela's parents indicated that the averments in the motion were true and accurate to the best of their knowledge. The Russells' discovery responses were also filed. Like the Houglan survey, the Russells' survey demonstrated that the Nunns' driveway and deck encroached upon Lot 47.

In their motion, the Nunns argued that they had acquired title to the disputed property through adverse possession; that the "adverse possession doctrine defeats any deed restrictions"; and that, therefore, they were entitled to judgment quieting title to the property. The Russells responded and filed their own motion for summary judgment. They filed a copy of the deed restrictions and argued that the record established that they were entitled to judgment as a matter of law.

By its order entered July 31, 2025, the circuit court concluded that the Nunns had indeed acquired title to the disputed property through adverse possession. Through its order entered on September 24, 2025, it also rejected the

Russells' attempt to enforce the provisions of the deed restrictions governing the subdivision. The court concluded that an action to enforce the restrictions -- whether it sounded in tort or contract -- was time-barred and that the Nunns' were entitled to judgment as a matter of law. This appeal followed.

On appeal, the Russells argue that the trial court erred by concluding that the Nunns acquired title to the disputed property through adverse possession. We disagree.

In order to establish title through adverse possession, a claimant must show possession of disputed property under a claim of right that is hostile to the title owner's interest. *Moore v. Stills*, 307 S.W.3d 71, 77 (Ky. 2010). Possession of the property must be shown to be actual, open and notorious, exclusive, and continuous for a period of fifteen years. *Tartar v. Tucker*, 280 S.W.2d 150, 152 (Ky. 1955); KRS[1] 413.010.

The Russells argue that the Nunns' sporadic visits to the lake house for recreational purposes cannot support a claim for adverse possession. They cite Kevin Russell's affidavit indicating that the Nunns "had only visited their property no more than two occasions in 2024." However, they concede that the Nunns explained in written discovery that they "performed routine maintenance [to the deck, driveway, and gravel area], and made regular use thereof, since that time,

---

[1] Kentucky Revised Statutes.

summarily consisting of pressure washing, staining and replacing deck boards, replacing railings, laying the gravel path, and maintaining all green areas."

The parties' surveys show that the Nunns' predecessors-in-title made permanent physical improvements (part of a deck and driveway) to property lying beyond an undisputed boundary. This activity is sufficient to support a claim for adverse possession, and the Nunns were under no obligation to establish any activity on the disputed property more substantial than that. *See Kentucky Women's Christian Temperance Union v. Thomas*, 412 S.W.2d 869, 870 (Ky. 1967).

The Russells also contend that the topography of the adjoining lots prevents "the full view" of either of them from Timbercrest Lane. However, the "open and notorious" requirement is not a matter of visibility -- but of attitude and intention. It requires only that the possessor of the disputed property openly demonstrate an intention and purpose to hold dominion over it with such hostility that will give the non-possessory owner notice of the adverse claim. *Appalachian Regional Healthcare, Inc. v. Royal Crown Bottling Co.*, 824 S.W.2d 878, 880 (Ky. 1992) (citing *Sweeten v. Sartin*, 256 S.W.2d 524, 526 (Ky. 1953)). The permanent physical improvements appearing on Lot 47 clearly indicated an intention to hold the property hostile to the rights of the non-possessory owner and gave sufficient notice to the world of that intention. *See Gatliff Coal Co. v. Lawson*, 247 S.W.2d

375, 377 (Ky. 1952); *Warfield Natural Gas Co. v. Ward*, 149 S.W.2d 705 (Ky. 1940); *D.B. Frampton & Co. v. Saulsberry*, 268 S.W.2d 25 (Ky. 1954).

Whether the Russells could actually see from Timbercrest Lane that portions of the deck and driveway had been built beyond the boundary line is immaterial. Similarly irrelevant is the Russells' impression that building materials used on a portion of the deck appear newer than the original deck. The Nunns explained that they had replaced decking boards as needed. This activity did not interrupt the period of adverse possession. On the contrary, it underscores the Nunns' clear intention to hold the disputed property as their own and serves as further notice to all of that intention.

Next, the Russells argue that the circuit court erred by concluding that their action to enforce the deed restrictions was filed out of time. Again, we disagree.

Restrictive covenants governing the use of real property are enforceable according to their terms. *Hensley v. Gadd*, 560 S.W.3d 516, 518 (Ky. 2018). There is no dispute concerning the meaning and effect of the restrictions contained in Timbercrest subdivision deeds. The terms are unambiguous. And there is no dispute that the Nunns' property is subject to the restrictions. Instead, the issue before the circuit court was whether enforcement of those restrictions was barred by the period of limitations.

When the Nunns decided to place a storage shed near their lake house in 2021, the Timbercrest homeowners' association building committee advised them that erecting the structure at its intended location would violate deed restrictions. The Nunns acknowledged the committee's authority and application of the restrictions. They did not erect the storage shed as planned.

However, the evidence of record demonstrates that the Nunns' deck and driveway existed when the property was purchased by their predecessors-in-interest in December 2001. Yet no individual lot owner or representative of the subdivision sought to enjoin the breach of the deed restrictions until the Russells filed this action in August 2024. Pursuant to KRS 413.120, an action to enforce a deed restriction must be brought within 5 years. We agree with the conclusion of the circuit court that any enforcement is now time-barred.

We also note that deed restrictions are enforceable in contract. Pursuant to KRS 413.090, such actions must also be brought within 15 years. Again, we conclude that the time to do so had long since passed. The trial court did not err by concluding that an injunction could not be imposed.

The judgment of the Breckinridge Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Stephen G. Hopkins
Hardinsburg, Kentucky

BRIEF FOR APPELLEES:

Parker M. Wornall
Dayton N. Blair
Louisville, Kentucky